UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

STEVE D. BASCH and LINDA M. BASCH,

     Debtors.

_____/

Case No. 15-01715
Hon. Scott W. Dales
Chapter 13

MEMORANDUM OF DECISION AND ORDER

PRESENT:  HONORABLE SCOTT W. DALES
      Chief United States Bankruptcy Judge

## I. INTRODUCTION

The court conducted a contested confirmation hearing in the chapter 13 case of Steve and Linda Basch (the "Debtors") on September 18, 2015 in Traverse City, Michigan. Chapter 13 trustee Brett N. Rodgers (the "Trustee") appeared by remote electronic transmission from Grand Rapids, Michigan. The Debtors and their principal creditor, Ready Cap Lending ("Ready Cap"), appeared in Traverse City through counsel.

Although the court had intended to conduct a full confirmation hearing, by the time of the hearing, the Debtors, through plan amendment, had resolved substantially all of the confirmation issues under § 1325 and chapter 13 more generally, except for the dispute with Ready Cap regarding the value of the Debtors' primary residence (the "Property"). [1] Accordingly, and with

---

[1] On September 17, 2015, the Debtors filed an amended plan (DN 43, hereinafter the "Plan") which, as the Trustee stated on the record, resolved all of his concerns, and prompted him to recommend confirmation with a caveat regarding the treatment of the tax claims of the Michigan Department of Treasury and the United States Internal Revenue Service ("IRS"). Debtors' counsel represented that Michigan's taxing authorities have accepted the treatment the Debtors proposed through the Plan, and although the IRS has not yet done so, he expected the IRS to accept its treatment after its counsel has had an opportunity to review it. For its part, Ready Cap's objection to the feasibility of the Plan, premised on the lender's doubts about the prospect of refinancing the Property, remain. At the beginning of the confirmation hearing, the court agreed to adjourn to a later hearing whatever IRS-related and feasibility issues that may remain despite the recent amendment.

the consent of the parties, the court conducted a valuation hearing to decide what the Property is worth for purposes of confirming the Plan and valuing Ready Cap's secured claim. *See* 11 U.S.C. § 506(b); Fed. R Bankr. P. 3012.

## II. JURISDICTION

The court has jurisdiction over the Debtors' case by way of reference from the United States District Court for the Western District of Michigan. *See* 28 U.S.C. §§ 157(a) and 1334(a); W.D.Mich. LCivR 83.2(a). A contested plan confirmation is a "contested matter" which Congress treats as a "core proceeding," 28 U.S.C. § 157(b)(2)(L), and the court has ample authority to determine value in connection with the confirmation of a chapter 13 plan.

## III. ANALYSIS

The parties agreed that the hearing would determine the extent of Ready Cap's secured claim, given (i) the prior claim of Fifth Third Bank in the amount of approximately $95,000.00 and (ii) the fact that Ready Cap's claim substantially exceeds the value that either party assigns to the Property. The Debtors contend that the Property is worth $500,000.00; Ready Cap says it is worth $650,000.00.

The court admitted three appraisals on the parties' stipulation, two from the Debtors and one from Ready Cap.[2] In addition, the court heard testimony from Mr. Basch, his appraiser (Jeffrey L. Kirby), and Ready Cap's appraiser (Lynda Mae Aldrich). The court found each of the witnesses credible, and qualified both appraisers as experts under Fed. R. Evid. 702.

---

[2] One of the appraisals that the Debtors offered was actually prepared for Ready Cap's predecessor.

The point of Mr. Kirby's testimony, as far as the court perceived it, was to give the court some background about the Property itself, its location and characteristics. From his testimony, corroborated by the testimony of the appraisers, the Property is situated on 100 feet of sandy Lake Michigan shoreline, on East Grand Traverse Bay, in close proximity to downtown Traverse City. The Property serves as the Debtors' residence for nine months of the year, and recently they have begun renting it to vacationers for approximately $2,000.00 per week during the summer months. From this report, the court concludes that the Debtors' home is a desirable residential and resort property, in addition to its role as collateral for Ready Cap's substantial commercial claim.

Mr. Basch's testimony, however, also highlighted the Property's two principal shortcomings. First, and foremost, the Property fronts on Munson Avenue, also known as U.S. 31, a busy five-lane highway. In her appraisal, Ms. Aldrich describes Munson Avenue as a "busy, paved, publicly maintained five lane road," and Mr. Kirby mentions "high traffic exposure along Munson Avenue (US 31) which is a commonality along this stretch of Munson without any serious marketability issues in the past." *See* Exh. A at p. 5 (Aldrich Appraisal) and Exh. 2 at p.3 (Kirby Appraisal). According to Mr. Basch, who lives at the Property, the heavy traffic traveling along U.S. 31 impedes access to the Property.

Drawing inferences from the testimonial and documentary evidence, the traffic evidently makes it difficult to back out of a driveway onto Munson Avenue, prompting some homeowners to dedicate a portion of their front yards as circular or turnaround driveways, such as the driveway serving the Property. This fix, however, invites the motoring public to use the Debtors' driveway as a "turnaround,' prompting them to park a vehicle at one of the entrances to discourage the public from using the driveway as a turnaround.

Second, given the proximity of U.S. 31 to Lake Michigan along this strip of Munson Avenue, the lot is "shallow," meaning that the improvements are relatively close to the highway, as well as the beach.  The former is evidently the price one must pay for the latter along this stretch of U.S. 31 known to some as the "Miracle Mile."  Mr. Basch, who described his lot as one of the smaller lots in the vicinity, also suggested that, due to "set back" requirements, the improvements to the Property —his house— may not conform to local zoning ordinances because its footprint may lie too close to the neighbor's lot line.  The size of the lot, in other words, may limit future development, given local set back requirements, at least as Mr. Basch understands them.  Without consulting the ordinance, the court nevertheless regards this unchallenged observation as plausible, and also adversely affecting the Property's value.  A buyer interested in tearing down the improvements and rebuilding on the site may face regulatory hurdles, limiting the market for this Property to some extent, and therefore depressing its value.  Mr. Basch himself did not offer an opinion on the value of the Property.

Ready Cap's appraiser, Ms. Aldrich, testified about her qualifications, experience and licensure. Ms. Aldrich has served as a certified appraiser since approximately 2004, initially under the tutelage of a licensed appraiser and eventually going out on her own.  She is now the principal of Northern Michigan Appraisals.  She specializes in appraising waterfront properties in Grand Traverse, Antrim, Kalkaska, Leelanau, and Benzie counties within the northern portion of Michigan's Lower Peninsula.  She is familiar with the market, and lives near the Property.

After the court qualified her as an expert pursuant to Fed. R. Evid. 702, Ms. Aldrich opined that the Property as of December 2014, was worth $650,000.00.  She explained her methodology which relied principally, though not exclusively, on the sales comparison approach that appraisers

customarily employ when valuing residential (i.e., non-income producing) property.[3] She testified that she considered comparable properties or "comparables" dating back approximately ten years[4] before settling on the six comparables identified in her appraisal report. Like Mr. Kirby, she had some difficulty locating or identifying comparable properties in close proximity to the Property and therefore selected several waterfront properties from other neighborhoods in the vicinity. Because of these difficulties, Ms. Aldrich had to make a number of adjustments to the comparables as is customary in the appraisal industry. Each adjustment requires judgment and experience in gauging the impact of various attributes of a comparable on the market's perception and therefore value of the property. Although some of the adjustments that she made to several comparables seemed rather large, suggesting that the comparable might not be that comparable in the first place, Ms. Aldrich honestly defended the adjustments that she made on cross examination and stood by her opinion of value.

Mr. Kirby, the Debtors' appraiser, testified at considerable length about his experience in the appraisal industry dating back to 1982. He worked closely with his father who was also an appraiser in Northern Michigan in addition to serving as an assessor for local governmental units. He holds a license from the State of Michigan and has been actively involved over the last 30 years in the Northern Michigan market, especially the market for waterfront residential and resort properties.[5]

---

[3] Ms. Aldrich also employed a cost approach but like Mr. Kirby regarded the cost approach as less than helpful given the nature of the Property and the behavior of market participants. As Mr. Kirby explained, the general apprehension about applying the cost approach to valuation of existing residential property, is that market participants do not typically ask a builder to estimate what it would cost to build a 30 year old homestead.

[4] The court was surprised to hear that Ms. Aldrich considered comparables predating the market and economic disruptions of 2008, but her testimony indicates that she ultimately did not rely on these considerably outdated transactions after all.

[5] Although Mr. Kirby is acquainted with the Debtors' counsel professionally and personally, the court has considered the potential for bias and does not regard the relationships as disqualifying.

Like Mr. Basch, Mr. Kirby noted the dimensional limitations of the Property as well as the impediments to access resulting from the heavy traffic traveling the five lane stretch of U.S. 31. This shortcoming, however, did not unduly depress the value of the Property according to Mr. Kirby because the benefits of that stretch of sandy beach evidently offset the detriment. Mr. Kirby, like Ready Cap's appraiser, experienced some difficulties in finding suitable comparables for use in the sales comparison approach. He selected several properties from within the relevant marketplace, although not all of them came from the exact neighborhood surrounding the Property. To account for the dissimilarities between the comparables and the subject Property, Mr. Kirby made adjustments as his judgment required to account for the value that market participants would attach either positively or negatively to specific characteristics of the comparables. Despite a capable cross examination by Ready Cap's counsel, the court could find no substantial shortcomings in Mr. Kirby's appraisal methodology or adjustments. He impressed the court as an experienced and careful[6] technician, in part by his testimony correcting what the court regards as typographical and largely immaterial errors within the appraisal report. After the court qualified him as an expert pursuant to Fed. R. Evid. 702, and consistent with his appraisal report, Mr. Kirby opined that the value of the property as of August, 2015 was $500,000.00.

This valuation dispute presents the classic "battle of the appraisers," and a battle involving two competent appraisers at that. Although the court is free to arrive at its own conclusion of value, perhaps selecting a figure other than one that either appraiser offered, the court feels somewhat constrained to choose among the two leading opinions given its confidence in both.

---

[6] For example, at the beginning of his testimony, Mr. Kirby took pains to correct several typographical and mathematical errors included in his appraisal. The correction of these minor errors fortified, rather than undermined, the court's confidence in the appraisal by demonstrating Mr. Kirby's commitment to detail and accuracy.

Having carefully considered the testimony and the three exhibits admitted during the hearing, the court finds the opinion of Mr. Kirby to be more persuasive for several reasons.

First, the appraisal is closer in time to the hearing by approximately nine months. Although the market is relatively stable according to both appraisers, the temporal proximity nevertheless favors Mr. Kirby's appraisal. This is especially true in view of the guarded optimism about the trends in the marketplace that both appraisers reported.

Second, Mr. Kirby has considerably more experience valuing residential waterfront property than Ms. Aldrich. The experience is crucial given the many instances in which an appraiser must make adjustments to account for market reactions to differences between the subject of the appraisal and the comparables, particularly where, as here, true comparables are hard to find.

Third, although the author of the 2013 appraisal did not testify, the $400,000.00 value expressed in that summary report, prepared at the behest of Ready Cap's predecessor, suggests a lower rather than higher value for the Property. Again, despite the timing differential, both appraisers testified that the market was relatively stable, permitting the court to give the 2013 appraisal at least some weight.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the court finds that the Property is worth $500,000.00 for purposes of plan confirmation and distribution, and establishing the secured claim of Ready Cap after taking into account Fifth Third Bank's senior lien.

NOW, THEREFORE, IT IS HEREBY ORDERED that the parties shall treat the Property for plan confirmation and distribution purposes as having a value of $500,000.00 and that Ready Cap shall have a secured claim in that amount.

IT IS FURTHER ORDERED that the Clerk shall schedule a final hearing on confirmation of the Plan to be conducted by telephone if possible for the convenience of the parties.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Brett N. Rodgers, Esq., Michael J. Corcoran, Esq., Kevin Morrissey, Esq., and the parties appearing on the matrix.

END OF ORDER

**IT IS SO ORDERED.**

**Dated September 23, 2015**



Scott W. Dales
United States Bankruptcy Judge